IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JOHN LEWIS,

    Plaintiff,

    v.

PAUL MEDFORD, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:22-CV-1806-TWT

## OPINION AND ORDER

This is a personal injury action. It is before the Court on Plaintiff John Lewis's Motion to Exclude the Testimony of Clarence Easterday [Doc. 198] and Motion to Exclude the Testimony of Thomas Dopson [Doc. 199]. It is also before the Court on Defendants ACE American Insurance Co. ("ACE"), McCoy Group, Inc. ("McCoy"), Paul Medford, and Quest Liner, Inc.'s ("Quest Liner") Motion for Summary Judgment [Doc. 195] and Motion to Exclude the Testimony of Adam Grill [Doc. 196]. For the reasons set forth below, Plaintiff Lewis's Motion to Exclude the Testimony of Clarence Easterday [Doc. 198] is DENIED, and his Motion to Exclude the Testimony of Thomas Dopson [Doc. 199] is DENIED. Defendants ACE, McCoy, Medford, and Quest Liner's Motion for Summary Judgment [Doc. 195] is GRANTED in part and DENIED in part, and their Motion to Exclude the Testimony of Adam Grill [Doc. 196] is GRANTED in part and DENIED in part.

## I.    Background[1]

This action arose from a motor vehicle accident between Plaintiff John Lewis and Defendant Paul Medford in January 2021 in Cobb County. (Pl.'s Statement of Material Facts ¶ 5 [Doc. 203-1]). Lewis was driving a tow truck on Interstate 20 for the purpose of picking up a "disabled" vehicle on the right shoulder of the interstate. (*Id.* ¶ 1; Defs.' Statement of Undisputed Material Facts ¶ 1 [Doc. 195-2]). Medford was driving a tractor trailer on the same highway and moving in the same direction. (Pl.'s Statement of Material Facts ¶ 2). A dash cam recorded the event of the accident. (*See generally* Pl.'s Br. in Opp'n to Defs.' Mot. for Summ. J., Ex. B ("Dash Cam") [Doc. 206]). Once Lewis located the disabled vehicle on the shoulder, he turned on his hazard lights, which are flashing amber lights located both on top of and behind the tow truck, and began slowing down. (Pl.'s Statement of Material Facts ¶¶ 3–4; Defs.' Statement of Undisputed Material Facts ¶¶ 2, 7–8). He began slowing down by taking his foot off the gas pedal (rather than applying the brakes). (Pl.'s Statement of Material Facts ¶ 3.) At one point while slowing down, the Dash Cam appears to show that his rear amber lights (but not top amber lights) turned off.[2] (Defs.' Statement of Undisputed Material Facts ¶ 3; *see*

---

[1] The operative facts on the Motion for Summary Judgment are taken from the parties' Statements of Undisputed Material Facts and the responses thereto. The Court will deem the parties' factual assertions, where supported by evidentiary citations, admitted unless the respondent makes a proper objection under Local Rule 56.1(B).

[2] The Court notes that the video quality is low, so it is possible that the

*also* Dash Cam, at 0:12 (showing the same)). Approximately ten seconds later, Lewis began slowing down by applying the brakes (rather than merely taking his foot off the gas pedal). (Dash Cam, at 0:22; Pl.'s Statement of Material Facts ¶ 5; Defs.' Statement of Undisputed Material Facts ¶ 10.) Approximately 2.2 seconds after that, Medford's tractor trailer collided with the back of Lewis's tow truck. (Defs.' Statement of Undisputed Material Facts ¶ 10; Pl.'s Statement of Material Facts ¶ 33).

At the time of the incident, Medford was an employee of Defendant Quest Liner, Inc., (*see* Defs.' Statement of Undisputed Material Facts ¶ 18), and Quest Liner was insured by Defendant ACE American Insurance Co., (*see* Am. Compl. ¶¶ 24–27 [Doc. 6]). The Court additionally notes that Quest Liner is a subsidiary of Defendant McCoy Group, Inc. (Br. in Supp. of Defs.' Mot. for Summ. J., at 18 n.1 [Doc. 195-1]).

In this suit, Lewis seeks compensatory and punitive damages from Defendants Medford, Quest Liner, and McCoy, and he seeks the proceeds of Quest Liner's insurance policy from Defendant ACE. (Am. Compl. ¶¶ 56–91). Four motions are now before the Court. Lewis currently moves to exclude the expert testimonies of Clarence Easterday [Doc. 198] and Thomas Dopson [Doc. 199]. The Defendants collectively move to exclude the expert testimony

---

rear amber lights may have remained on but not visible to the camera for a time. (*See* Dash Cam, at 0:23–0:24 (possibly showing that the rear amber lights are on immediately prior to the collision).) As far as the Court can tell, Lewis does not testify that he at any point turned off his rear amber lights.

of Adam Grill [Doc. 196] and for summary judgment [Doc. 195].

## II.    Legal Standard

Federal Rule of Evidence 702 instructs that "expert testimony is admissible if (1) the expert is qualified to testify regarding the subject of the testimony; (2) the expert's methodology is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the expert's testimony will assist the trier of fact in understanding the evidence or determining a fact at issue." *Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1304 (11th Cir. 2014). The Federal Rules of Evidence require a district judge to take on a gatekeeping function to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrill Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). "In considering the proffered expert testimony, a trial judge is mindful the burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion." *Chapman*, 766 F.3d at 1304 (quotation marks and punctuation omitted).

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c). The court should view the evidence and draw any inferences in the light most favorable to the nonmovant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue

4

of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

### III.    Discussion

#### A. Motions to Exclude Expert Testimony

##### 1.  Clarence Easterday

Clarence Easterday is an expert for the Defendants who describes himself as an expert on "safety and fleet management, driver hiring and training, insurance program design and risk management." (Defs.' Resp. Br. in Opp'n to Pl.'s Mot. to Exclude the Testimony of Easterday, Ex. A, at 2 [Doc. 205-1].) Lewis seeks to exclude Easterday's testimony in its entirety on the grounds that he "improperly testified regarding human factors," a subject in which he is not an expert and that includes "opinions concerning Defendant Medford's perception and reaction time as it pertains to the subject collision." (Pl.'s Mot. to Exclude the Testimony of Easterday, at 2.) In the alternative, Lewis seeks to exclude the portions of Easterday's testimony pertaining to human factors. (*Id.* at 8.)

After reviewing the relevant portions of Easterday's testimony, the Court concludes that Easterday did not exceed the scope of his expertise. As an initial matter, the human factors testimony in question appears to be limited to responses to deposition questions asked exclusively by Lewis's counsel on

human factors. (*See id.* at 3–5, 7–8.) Easterday appropriately and repeatedly clarified in his responses that he is not a human factors expert. (Easterday Dep. at 70:5–18 [Doc. 198-1] ("I'm not a human factors person"); *id.* at 184:1–8 ("I'm not a . . . human factors person"); *id.* at 188:13–22 ("My opinion. Won't testify to that because I have no background for it. But I expect . . ."); *id.* at 190:9–12 ("I'm not a human factors expert."); *see also id.* at 157:11–25 (explaining that opinions on Quest Liner's preventability determination are "beyond [his] scope").) And he was careful to qualify that his limited responses regarding human factors were based on testimony he reviewed from others, including the Defendants' human factors expert (Dr. Stephani Borzendowski).[3] (*Id.* at 27:12–28:7 (explaining which testimony he had reviewed in formulating his opinions); *id.* at 70:5–23 (referring to Borzendowski's report on human factors); *id.* at 182:18–183:2 (qualifying that his response was "based on everything [he had] seen"); *id.* at 184:19–185:10 (clarifying that his responses regarding braking timing are based on his recollection of Medford's testimony); *id.* at 190:13–191:19 (stating that his responses regarding "perception-reaction time" were based on what he "read [ ] in the reports" and that he could not provide "specific[ ]" numbers regarding reaction time).) Accordingly, his responses did not exceed the scope of his expertise. *See Hendrix v. Evenflo Co.*, 255 F.R.D. 568, 607 n.75 (2009) (noting that an expert may rely on the opinion

---

[3] It is the Court's understanding that Lewis has not challenged the qualifications of Borzendowski.

of another expert where "he ha[s] a reasonable belief that [the other expert's] opinion was reliable"). And Lewis makes no argument that Easterday's report itself opines on human factors or otherwise exceeds the scope of Easterday's expertise. Therefore, the Court declines to exclude Easterday's testimony in whole or in part.

### 2.  Dr. Thomas Dopson

Dr. Thomas Dopson is an orthopedic surgeon serving as an expert for the Defendants. He specializes in "adult spine surgery, arthroscopy, [and] reconstructive surgery." (Defs.' Resp. Br. in Opp'n to Pl.'s Mot. to Exclude the Testimony of Dopson, Ex. C ("Dopson Report"), at 1 [Doc. 200-3].) Lewis moves to exclude Dr. Dopson's testimony in its entirety or, alternatively, to exclude the portions of Dr. Dopson's testimony on Lewis's "neurological status." (Pl.'s Mot. to Exclude the Testimony Dopson, at 2–3.) The testimony on Lewis's neurological status refers to Dr. Dopson's deposition testimony in which he opines that Lewis's CT and MRI imaging did not reveal any "acute" (accident-related) brain injuries or cerebral vascular problems and explains his basis for believing so. (*See* Pl.'s Mot. to Exclude the Testimony of Dopson, at 3–4 (first citing Dopson Dep. at 68:8–20 [Doc. 199-1]; then citing *id.* at 69:2–11; and then citing *id.* at 69:12–25, 70:1–8).) Lewis makes two arguments about this testimony: (1) Dr. Dopson is not qualified to testify regarding Lewis's brain injuries and cerebral vascular problems because he is an orthopedic surgeon and not a neurologist or neurosurgeon, (*id.* at 6–8), and (2) the deposition

7

testimony on this subject must be excluded because they were not first contained in Dr. Dopson's expert report, (*id.* at 8–10).

The Court denies Lewis's motion to exclude Dr. Dopson's testimony in whole or in part. The Court agrees with the Defendants that (1) Dr. Dopson's testimony, including testimony assessing imaging records for Lewis's neurological status, is sufficiently reliable based on Dr. Dopson's qualifications, and (2) the opinions Dr. Dopson expressed in his deposition were not new or otherwise absent from his expert report.

First, Dr. Dopson is sufficiently qualified to opine on Lewis's CT and MRI imaging records in the way he has. Dr. Dopson's testimony suggests that an assessment of the same (or similar) is part of his daily practice as an orthopedic surgeon. (Dopson Dep. at 70:18–21 ("I do neurological exams every day in the office.").) And it is apparent from Dr. Dopson's testimony and expert report that there is some degree of interconnectedness between spinal surgery and neurology. (*See* Dopson Report at 3, 5 (referencing "neurological" injuries and "neurologic impingement"); Dopson Dep. at 24:25–25:16 (mentioning "American Orthopaedic Academy" standards regarding operating without "acute neurological findings").) The Eleventh Circuit has also expressly stated that a physician "need not be a specialist in the particular medical discipline to render expert testimony relating to that discipline." *McDowell v. Brown*, 392 F.3d 1283, 1297 (11th Cir. 2004) (quoting *Gaydar v. Sociedad Instituto Gineco-Quirurgico y Planificacion*, 345 F.3d 15, 24 (2003)) (interpreting federal

evidentiary rules). The cases that Lewis cites for the contrary position are inapposite; those cases applied Georgia-specific evidentiary rules to medical malpractice claims. *Dutton v. United States*, 621 F. App'x 962, 966 (11th Cir. 2015) (per curiam) (applying Georgia's evidentiary rules to medical malpractice claims in federal court because "Georgia's evidentiary rules are so intimately intertwined with its medical malpractice laws that it would create an *Erie* conflict not to apply the state evidentiary rules in federal court"); *Nathans v. Diamond*, 282 Ga. 804, 806 (2007) (applying Georgia evidentiary rules in state court); *Humphrey v. Emory Clinic, Inc.*, 369 Ga. App. 131, 138 (2023) (same). Such is not the case here, where the Court must merely apply federal evidentiary rules.

Second, Dr. Dopson's deposition does not contain testimony beyond the scope of his expert report. Dr. Dopson expressly acknowledges that he reviewed Lewis's radiological records (the CT and MRI imaging) and states that there was no evidence of acute neurological injuries. (Dopson Report, at 3.) The fact that the report does not go into great detail regarding these findings does not save Lewis's argument. Therefore, for all the above these reasons, Lewis's motion to exclude Dr. Dopson's testimony is denied.

### 3. Adam Grill

Plaintiff Lewis has retained Adam Grill as a trucking safety expert. Grill describes his methodology as follows:

My methodology is to identify specific case material or case facts

9

related to the operation of a commercial motor vehicle or management of a commercial motor vehicle driver, to compare that information with known industry regulations and standards related to the operation of the vehicle in terms of the sequence of events in a case and to review that material based on my own experience, education and training to determine if there are any specific discrepancies between the actions of the commercial driver and the expected actions of a reasonable driver in the same or similar circumstance.

(Grill Dep. at 37:2–37:14 [Doc. 195-7].) And he makes seven ultimate conclusions based on that methodology: (1) Medford was required to have certain necessary skills and knowledge regarding safe driving, (2) Medford failed to "apply defensive driving concepts"; (3) Medford failed to apply certain "industry regulations and standards" such as looking ahead, keeping a safe following distance, recognizing hazards, and driving with caution; (4) Medford "had the time and opportunity to see the hazards around him but failed to respond in a safe and reasonable manner"; (5) "Quest [Liner] is responsible for the actions of Defendant Medford as it relates to the safe operation of a [commercial motor vehicle]"; (6) Quest Liner has training and supervision responsibility over Medford; and (7) Quest Liner and Medford could have prevented the accident. (Defs.' Mot. to Exclude the Testimony of Grill, Ex. A ("Grill Report"), at 28 [Doc. 196-1].)

The Defendants seek to exclude Grill's testimony on two primary grounds: (a) Grill's opinions are nothing more than conclusory statements without an analysis or application of the specific facts at hand and are thus not reliable, and (b) Grill's testimony would be unhelpful to a jury because his

10

opinions regarding whether Medford exercised ordinary care are not based on analysis beyond the skills of a juror. (Defs'. Mot. to Exclude the Testimony of Grill, at 12–21.) Lewis responds by arguing: (a) Grill's testimony and report indicate that he reviewed and relied on case-specific material in forming his opinions, but Grill can nonetheless supplement his report under Rule 26(e), and (b) courts have found helpful similar reports that put accidents in the context of trucking standards and regulations. (Pl.'s Resp. Br. in Opp'n to Defs.' Mot. to Exclude the Testimony of Grill, at 10–16 [Doc. 202].)

As described below, the Court grants the Defendants' motion to exclude as to Conclusions 3, 4, and 7 (regarding Defendant Medford's and Defendant Quest Liner's negligence) and denies the motion as to Conclusions 1, 2, 5, and 6 (regarding trucking safety standards).

a) Reliability. The Court holds that Conclusions 3–4 (Medford's negligence) and Conclusion 7 (both Medford and Quest Liner's negligence) are mere *ipse dixits* and should be excluded as insufficiently reliable. As the Eleventh Circuit has helpfully explained, "[t]he trial court's gatekeeping function requires more than simply 'taking the expert's word for it.' . . . If admissibility could be established merely by the *ipse dixit* of an admittedly qualified expert, the reliability prong would be, for all practical purposes, subsumed by the qualification prong." *United States v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004) (citations omitted); *see also Hughes v. Kia Motors Corp.*, 766 F.3d 1317, 1331 (11th Cir. 2014) ("A court may conclude that there is too

11

great an analytical gap between the data and the opinion proffered." (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997))). Below, the Court first discusses the conclusory nature of Grill's opinions regarding Medford's negligence, then discusses the same regarding Quest Liner's negligence.

First, regarding Medford's alleged negligence (contained in Conclusions 3, 4, and 7), Grill testifies that Medford knew or should have known about certain safe driving standards and had a responsibility to apply them. (Grill Report, at 17–21.) He then testifies that "Defendant Medford had the time and opportunity to see the hazards around him but failed to respond in a safe and reasonable manner." (*Id.* at 28; *see also id.* at 25 ("Medford clearly had a better opportunity to avoid his collision compared to the previously cited case study.").) He also states that "Medford should have recognized that a tow truck would be slowing down to assist or to tow a vehicle" by way of the tow truck's amber lights, (*id.* at 22), but the mere presence of the amber lights is all that the Court can find in Grill's expert report regarding the facts of the incident.

Here, Grill has not shown his work as to his conclusion that Medford was negligent and that he had the opportunity to reasonably avoid the collision. His testimony does not sufficiently analyze or reference the facts specific to this case, leaving "too great an analytical gap" in his reasoning. *See Hughes*, 766 F.3d at 1331 (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)) And it is not sufficient that Grill testified that he did review the

available facts and records, which is all that Lewis's response brief appears to muster. (*See* Pl.'s Resp. Br. in Opp'n to Defs.' Mot. to Exclude the Testimony of Grill, at 8–9.) Because Grill's opinions appear merely conclusory—without sufficiently explained grounds or application to facts—the Court cannot conclude that "it is more likely than not that . . . the testimony is the product of reliable principles and methods." FED. R. EVID. 702(c). Therefore, the Court grants the Defendants' motion to exclude as to Medford's negligence (contained in Conclusions 3, 4, 7).

Second, regarding Quest Liner's alleged negligence (contained in Conclusion 7), Grill does not point to any facts or evidence to support the opinion in his report that Quest Liner negligently hired, trained, supervised, or entrusted Medford (beyond the fact of the incident itself), (*see* Grill Report, at 15), and he later expressly stated in his deposition that he does not have an opinion on the topic, (*see* Grill Dep. at 80:20–85:7). Therefore, his opinions regarding Quest Liner's negligence (contained in Conclusion 7) appear not only to be unreliable for the same reasons as his opinions regarding Medford's negligence but also incomplete.

The Court notes that Lewis acknowledges the incomplete nature of Grill's opinions regarding Quest Liner's negligence. Lewis claims that Grill's opinions regarding Quest Liner (and Medford's) negligence were incomplete when initially provided because two types of evidence were unavailable at the time: (1) the deposition of Quest Liner's corporate representative, and

13

(2) Quest Liner's recorded driving data for Medford. (Pl.'s Resp. Br. in Opp'n to Defs.' Mot. to Exclude the Testimony of Grill, at 10–11.) As a result, Lewis contends that he may file a supplemental report by Grill taking into account this newly discovered evidence. The Court clarifies that supplementing Grill's expert report under Rule 26(e)(1)(a) is not appropriate at this time nor a cure-all for the potential defects in Grill's testimony.

Under Rule 26(e), a party "must supplement or correct" witness testimony if (a) "the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing" or (b) the Court orders such supplement or correction. FED. R. CIV. P. 26(e)(1). The thrust of the rule is to allow parties to "correct inaccuracies" or "add information not available when the report was filed," *Crawford v. ITW Food Equip. Grp., LLC*, 977 F.3d 1331, 1341 (11th Cir. 2020), while avoiding gamesmanship (e.g., seeking to "avert summary judgment" by "supplementing" one report with a "new and improved" version), *Griffin v. United States*, 2021 WL 4947180, at *13 (M.D. Fla. July 30, 2021) (collecting cases). But it is "not an excuse to rewrite an expert report or present new opinions" or "annul opinions or offer new ones to perfect a litigating strategy." *Coward v. Forestar Realty, Inc.*, 282 F. Supp. 3d 1317, 1329 (N.D. Ga. 2017); *Cochran v. Brinkmann Corp.*, 2009 WL 4823858, at *5 (N.D. Ga. Dec. 9, 2009)).

Here, Grill submitted his initial expert report in January 2023 and was deposed December 2023. The information that Lewis deems newly discovered under Rule 26(e)(1)(a) has been available since February 2024 (Quest Liner's deposition) and April 2024 (production of Medford's recorded driving data). No supplemental report has been filed since the parties fully briefed this motion to exclude (November 2024) nor since then (now, May 2025). The time for Lewis to timely file Grill's supplemental report under Rule 26(e)(1)(a) has passed.

b) Helpfulness to a jury. The Court concludes that the remaining parts of Grill's expert testimony on the standards, regulations, and training of commercial truck drivers (Conclusions 1, 2, 5, and 6) would be helpful to a jury. Expert testimony must be "more likely than not" to "help the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702(a). To be helpful, the expert's opinion must "concern[ ] matters that are beyond the understanding of the average lay person." *Frazier*, 387 F.3d at 1262.

The Defendants contend that Grill's testimony should be excluded because (1) many of the "various literatures and driving concepts" that Grill cites are not "authoritative" or "binding," (Defs.' Mot. to Exclude the Testimony of Grill, at 10); (2) Grill is "unable to definitively state what percentage of motor carriers in the industry are following the standard that he is testifying about," (*id.*); and (3) his discussion of varying industry standards will confuse the jury, which must apply a simple ordinary care analysis, (*id.* at 9).

The Court disagrees with the Defendants. The issues they raise speak

to credibility rather than admissibility. It seems more likely than not that Grill's analysis regarding industry-wide standards in safe driving, training, and other areas would assist the jury on the whole in determining whether Medford applied ordinary care, even if Grill's language is not the most precise or detailed. Grill's opinions go beyond a mere summary of the Federal Motor Carrier Safety Regulations and the commercial driver's license manual, speaking to other information such as the ways in which commercial motor vehicles are "more complicated" and "more difficult to operate" than other vehicles. (Grill Report, at 9.) The Southern District of Georgia found this combination of information helpful to a jury, stating that "the operation and safe driving standards of commercial trucks is likely beyond the understanding of a lay person." *Tuk v. U.S. Xpress, Inc.*, 2021 WL 2433800, at *15 (S.D. Ga. June 15, 2021) (citing *Jackson v. Catanzariti*, 2019 WL 2098991, at *10 (S.D. Ga. May 14, 2019)). And this makes sense: the average juror does not a drive a tractor trailer and is likely unfamiliar with the typical operation and standards of such. Therefore, the Court denies the Defendants' motion to exclude Grill's testimony as to trucking safety standards (Conclusions 1, 2, 5, and 6).

## B. Motion for Summary Judgment

### 1. Negligence of Defendant Medford (Count I)

The Amended Complaint alleges that Lewis's injuries were caused by Medford's negligence in failing to maintain a "proper lookout" and "keep a safe

16

distance" from Lewis, (Am. Compl. ¶¶ 57–61), and by Medford's negligence per se in violating Georgia laws about driving with due care, following distance, obeying traffic laws, and reckless driving, (*id.* ¶ 62). To establish a claim for negligence in Georgia, a plaintiff must establish the existence of a legal duty, a breach of that duty, causation, and damages. *Collins v. Athens Orthopedic Clinic, P.A.*, 307 Ga. 555, 557 (2019) (citation omitted). To establish a claim for negligence per se, a plaintiff must establish that "a statute is violated, the person injured by the violation is within the class of persons the statute was intended to protect, and the harm complained of was the harm the statute was intended to guard against." *Murphy v. Bajjani*, 282 Ga. 197, 200 (2007) (citation omitted).

The Defendants seek summary judgment as to both the Plaintiff's negligence claim and negligence per se claim. According to the Defendants, Medford could not have reasonably foreseen that Lewis "would abruptly stop" on the highway in order to pull onto the shoulder. (Br. in Supp. of Defs.' Mot. for Summ. J., at 14 [Doc. 195-1]; *see also id.* at 16 ("[A driver] is not required to anticipate that some other user will unexpectedly violate the law or rule of the road and create a situation of danger." (citation omitted)).) Moreover, the Defendants assert that it was Lewis's negligence per se that caused the accident because Lewis failed to use his turn signal to give Medford notice that he was going to pull into the shoulder. (*Id.* at 15 (citing O.C.G.A. § 40-6-123).) And they argue that the flashing amber lights on Lewis's tow truck did not put

Medford on notice of Lewis's actions for two reasons: (1) Lewis's amber lights were meant to put other drivers on notice only once the tow truck had stopped on the road, (*id.* at 14–15 (citing O.C.G.A. § 40-6-16 [4])), and (2) Lewis's "continued usage of the flashing amber lights from the moment the video started until the accident . . . disprove[s] any claim of Plaintiff being a hazard," (*id.* at 15 (citing Borzendowski Dep. at 53:4–13 [Doc. 195-5]); *see also* Reply Br. in Supp. of Defs.' Mot. for Summ. J., at 4 [Doc. 208] ("[Lewis's] 'flashing lights' are legally and factually irrelevant since they were on from the moment he entered the highway.")).

Ultimately, the Court denies summary judgment on both the negligence and negligence per se claims. There is sufficient material in the record from which a reasonable jury could determine that Medford was put on notice such that he should have increased his following distance and slowed down in anticipation that Lewis might pull onto the shoulder. Specifically, Lewis points to the fact that he had his flashing amber lights on, began slowing down (including by triggering his brake lights), and had some degree of movement to the right. (Pl.'s Resp. Br. in Opp'n to Defs.' Mot. for Summ. J., at 15 [Doc. 203] (first citing Alexander Dep. 77:2–9 [Doc. 195-4]; then citing Borzendowski Dep. 54:1–4; and then citing Lewis Dep. 33:3–25, 38:18–20

---

[4] In their briefing, the Defendants cite O.C.G.A. § 40-6-14 regarding the operation of radio by motor vehicles, but the Court presumes that they intended to cite O.C.G.A. § 40-6-16 regarding stationary tow trucks displaying amber lights.

[Doc. 195-3]).) Whether Medford's actions, including his following distance, reflect ordinary care in light of the circumstances is a matter for the jury. *Hite v. Anderson*, 284 Ga. App. 156, 158 (2007) (citations omitted); *Swinney v. Schneider v. Nat'l Carriers, Inc.*, 829 F. Supp. 2d 1358, 1365 (N.D. Ga. 2011). Although the Defendants point to a section of the Georgia Code regarding the use of amber lights on stationary tow trucks, the Court finds that a genuine dispute of material fact remains as to whether Medford was nonetheless put on notice by way of Lewis's actions. The fact that Lewis's amber lights remained "continu[ously]" on "from the moment the video started until the accident"—which, to confirm, is only approximately twenty-five seconds—appears to do little for the Defendants' position. (Br. in Supp. of Defs.' Mot. for Summ. J., at 15 [Doc. 195-1]). A jury may rely on such fact in determining whether Medford was put on notice. Therefore, the Defendants are not entitled to judgment as a matter of law on this issue, and their Motion for Summary Judgment is accordingly denied.

### 2. Negligence of Defendants Quest Liner and McCoy (Count II)

The Amended Complaint alleges that Defendants Quest Liner (as Medford's employer) and McCoy (as Quest Liner's parent company) were negligent in their hiring, supervision,[5] training, and entrustment of Medford.

---

[5] The parties refer to this claim both as "negligent supervision" and "negligent retention." It is the Court's understanding that these claims are one and the same, as the parties cite the same underlying law.

(Am. Compl. ¶¶ 74–77.) To establish a claim for negligent hiring, a plaintiff must establish that, prior to hiring the employee, the employer "reasonably knew or should have known of an employee's 'tendencies' to engage in certain behavior relevant to the injuries incurred by the plaintiff." *Munroe v. Universal Health Servs., Inc.*, 277 Ga. 861, 863 (2004) (quoting *Harvey Freeman & Sons, Inc. v. Stanley*, 259 Ga. 233, 234 (1989)). To establish a claim for negligent supervision, a plaintiff must establish the same but with respect to information discovered after hiring the employee. *ABM Aviation v. Prince*, 366 Ga. App. 592, 597 (2023). For negligent training, a plaintiff must establish that the employer's "inadequate training caused a reasonably foreseeably injury." *Id.* at 598 (quotation marks and citation omitted). And for negligent entrustment of a vehicle, a plaintiff must establish that the employer acted negligently in "lending his vehicle to another to drive, with actual knowledge that the driver is incompetent or habitually reckless." *Quynn v. Hulsey*, 310 Ga. 473, 477 (2020) (quoting *CGL Facility Mgmt., LLC*, 328 Ga. App. 727, 731 (2014)).

The Court grants summary judgment as to negligent hiring and training claims but denies summary judgment with respect to Lewis's negligent supervision and entrustment claims. The Court discusses the claims in the following order below: hiring, supervision, training, and entrustment.

First, the Court grants summary judgment on Lewis's negligent hiring claim. Lewis does not contest summary judgment on this point, but the Court

must consider the available evidence regardless. Here, the Defendants' records indicate that Medford first received a commercial driver's license in 2006, (Br. in Supp. of Defs.' Mot. for Summ. J., Ex. F, at 1 [Doc. 195-8]), and was employed as a truck driver prior to joining Quest Liner, (Br. in Supp. of Defs.' Mot. for Summ. J., Ex. G ("Transportation Employment History"), at 1, 4 [Doc. 195-9]). His Transportation Employment History report also identifies no accidents in the seven years prior to working for Quest Liner,[6] when defined using the U.S. Department of Transportation's ("DOT") definition of "accident." (Transportation Employment History, at 2–3, 5.) While the report identifies five accidents that did meet the DOT's "accident" definition, the Court considers these accidents immaterial for the present purposes. (Transportation Employment History, at 2–3 (appearing to list damage from backing into a parked vehicle, hitting an animal, hitting an object on the road, backing into a stationary object, and mechanical failure).) For these reasons, summary judgment as to Lewis's negligent hiring claim is granted.

Second, the Court denies summary judgment on Lewis's negligent supervision claim. Quest Liner installs "Lytex" cameras on its vehicles, which record certain "events" based on driving behavior. Lewis argues that "Quest Liner was aware of Mr. Medford's propensity to follow too closely and other

---

[6] The parties have not specifically pointed to evidence regarding Medford's start date at Quest Liner, but the Court presumes that Quest Liner hired Medford in or around February 2018 based on the date of the report.

driving infractions" based on five recorded Lytex events. (Pl.'s Resp. Br. in Opp'n to Defs.' Mot. for Summ. J., at 18.) In August 2020 and September 2020, Medford triggered Lytex events for "failing to keep a proper following distance." (*Id.*; Lee Dep. at 191:20–21, 192:15–22 [Docs. 203-4, 203-5][7].) In July 2020, Medford also triggered a Lytex event for "late responding to a traffic situation ahead and that projected his eyes farther ahead provides him more time to enable a gradual stop." (Pl.'s Resp. Br. in Opp'n to Defs.' Mot. for Summ. J., at 18 (citing Lee Dep. at 193:3–9).) And, in October 2020, Medford "triggered two separate Lytex events for [an] improper 'rolling stop.'" (*Id.* (quoting Lee Dep. at 190:4–7 [Doc. 203-4]).) In response, the Defendants argue that these triggered events are not equivalent to actual accidents or citations and should thus be treated with lesser significance. (Reply Br. in Supp. of Defs.' Mot. for Summ. J., at 7–8; *see also id.* at 7 (finding no case law in which "a telematics system's warnings [was] sufficient to survive summary judgment with respect to negligent supervision or entrustment").) They also explain that the triggered events should be treated with lesser significance because they occurred over the course of "tens of thousands of miles driven." (*Id.* at 7–8.) However, the Court concludes that whether the Lytex events amount to negligence is a question for the jury. Lewis has provided "some evidence of incidents similar to the behavior that was the cause of the injury at issue," (*id.* at 8 (quoting

---

[7] Andy Lee's deposition transcript is split across two documents: Doc. 203-4 contains volume one, and Doc. 203-5 contains volume two.

*ABM Aviation*, 366 Ga. App. at 597)), and a reasonable jury could rely on such evidence in finding negligent supervision. Thus, on this issue, the Defendants are not entitled to judgment as a matter of law.

Third, the Court grants summary judgment on Lewis's negligent training claim. Lewis attempts to establish his negligent training claim by pointing to three primary facts: (1) Medford "received no training but was instead 'coached,'" in response to triggered Lytex events, (Pl.'s Resp. Br. in Opp'n to Defs.' Mot. for Summ. J., at 18–19); (2) Quest Liner did not conduct "disciplinary action or independent action" regarding Medford's following distance "after any of his coaching events," (*id.* at 19); and (3) Quest Liner "ironically" conducted a routine training on following distance just four days prior to the accident in question, (*id.* at 18). The Court finds these arguments unavailing because the proffered evidence is merely a record of instances of "coaching" and other trainings; it cannot be used to indicate that Quest Liner was negligent in training Medford on driving behavior. As the Defendants point out, Lewis fails to identify any compelling distinction between "coaching" and "training." (Reply Br. in Supp. of Defs.' Mot. for Summ. J., at 9.) And Lewis's own description of a "coaching event"—"an opportunity for Quest Liner to review the triggering event and to 'walk the driver through an opportunity to do something better,'" (Pl.'s Resp. Br. in Opp'n to Defs.' Mot. for Summ. J., at 4–5 (quoting Lee Dep. at 182:7–12))—suggests "training" is taking place. Moreover, the other facts relied on by Lewis—that the accident in question

23

occurred four days after a training and that additional "disciplinary" action did not follow coaching—do not themselves speak to whether the training was inadequate. Therefore, summary judgment as to this issue is denied.

Fourth, the Court denies summary judgment on Lewis's negligent entrustment claim. A claim for negligent entrustment of a vehicle requires "actual knowledge that the driver is incompetent or habitually reckless." *Quynn*, 310 Ga. at 477 (quoting *CGL*, 328 Ga. App. at 731). For reasons similar to the negligent supervision claim, the Court finds that Lewis has provided affirmative evidence that Quest Liner and McCoy possessed "actual knowledge" of Medford's failure to follow safely on multiple occasions, which a jury could construe as incompetence. Therefore, the Defendants are not entitled to judgment as a matter of law on this issue.

### 3. Punitive Damages (Count V)

In Georgia, a plaintiff in a tort action may be properly entitled to punitive damages where there is "clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." O.C.G.A. § 51-12-5.1(b). "Mere negligence, even gross negligence, is not enough to support a claim for punitive damages." *Lindsey v. Clinch Cnty. Glass, Inc.*, 312 Ga. App. 534, 536 (2011) (citing *Brooks v. Gray*, 262 Ga. App. 232, 232 (2003)).

The Defendants argue that Lewis has failed to provide evidence to

24

support his request for punitive damages. (Br. in Supp. of Defs.' Mot. for Summ. J., at 23–24.) In response, Lewis primarily points to Medford's Lytex events and the subject accident as evidence of Medford's pattern of "incompetent driving." (Pl.'s Resp. Br. in Opp'n to Def.'s Mot. for Summ. J., at 22–23.) But those are not enough for punitive damages. Lewis's own cited cases indicate that something more serious is needed. In *Lindsey v. Clinch County Class, Inc.*, 312 Ga. App. 534 (2011), the Georgia Court of Appeals stated that punitive damages require "a pattern or policy of . . . excessive speeding or driving while intoxicated" and not "a driver simply violat[ing] a rule of the road." *Id.* at 535 (citations omitted). Even the plaintiff in *Smith v. Tommy Roberts Trucking Co.*, 209 Ga. App. 826 (1993), had at least two known traffic citations and "several" other later-discovered citations. *Id.* at 828. Here, the Court is not convinced that recorded Lytex events—at least in the frequency and type currently presented—are equivalent to a pattern of prior accidents, traffic citations, or other "dangerous driving" that would justify punitive damages. The Court thus grants the Defendants' Motion for Summary Judgment as to Lewis's request for punitive damages in Count V.

### 4. Attorney's Fees

Attorney's fees are warranted when a defendant "has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense." O.C.G.A. § 13-6-11. The Defendants argue that Lewis failed to supply evidence warranting attorney's fees. (Br. in Supp. of Defs.' Mot. for

Summ. J., at 25.) In response, Lewis again points to Medford's Lytex events and argues that Quest Liner retained Medford as a driver in "bad faith" because it knew Medford had "prior instances of following too closely." (Pl.'s Resp. Br. in Opp'n to Defs.' Mot. for Summ. J., at 24. (citation omitted)) The Court agrees with the Defendants for the reasons set out in their brief. Chiefly, the Court is not persuaded that the existence of prior Lytex events—which were events recorded within Quest Liner's internal systems and followed by "coaching"—means that Quest Liner retained Medford as a driver in "bad faith." The Court therefore grants summary judgment to the Defendants as to attorney's fees.

## IV.    Conclusion

For the foregoing reasons, Plaintiff John Lewis's Motion to Exclude the Testimony of Clarence Easterday [Doc. 198] is DENIED, and his Motion to Exclude the Testimony of Thomas Dopson [Doc. 199] is DENIED. Defendants ACE American Insurance Co., McCoy Group, Inc., Paul Medford, and Quest Liner, Inc.'s Motion for Summary Judgment [Doc. 195] is GRANTED in part and DENIED in part, and their Motion to Exclude the Testimony of Adam Grill [Doc. 196] is GRANTED in part and DENIED in part. The Motion for Summary Judgment [Doc. 195] is GRANTED as to the negligent hiring and training claims (but not the negligent supervision and entrustment claims), punitive damages, and attorney's fees, and it is DENIED as to all other relief requested therein. The Motion to Exclude the Testimony of Adam Grill [Doc. 196] is

GRANTED as to Conclusions 3, 4, and 7 (regarding Defendant Medford's and Defendant Quest Liner's negligence) and denied as to Conclusions 1, 2. 5, and 6 (regarding trucking safety standards).

SO ORDERED, this ____6th____ day of May, 2025.

THOMAS W. THRASH, JR.
United States District Judge